IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

WILLIAM ST. GERMAIN,

                    Petitioner,          Civil Action No.
                                         9:13-CV-1530 (MAD/DEP)

          v.

STEPHEN RACETTE, Superintendent,
Great Meadow Correctional Facility,

                    Respondent.

_____

APPEARANCES:                             OF COUNSEL:

FOR PETITIONER:

WILLIAM ST. GERMAIN, *Pro se*
88-C-0712
Great Meadow Correctional Facility
Comstock, NY 12841

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN                PRISCILLA I. STEWARD, ESQ.
New York State Attorney General          Assistant Attorney General
120 Broadway
New York, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* petitioner William St. Germain, a New York State prison inmate, has commenced this proceeding pursuant to 28 U.S.C. § 2254 seeking habeas relief from this court. In his petition, as amended, St. Germain asserts several grounds for relief, primarily concerning alleged violations and inadequacies related to various collateral challenges to his conviction raised in state court.

Following the issuance of two orders from this court based on its initial review of the petition, respondent was granted leave to submit a response limited to the question of whether the petition is timely, with the understanding that if the petition is determined to be timely, respondent would be required to submit a more complete response, supplemented by the applicable state court records.

Based upon a careful review of the chronology associated with petitioner's conviction and subsequent state court proceedings, I conclude that the petition is untimely and petitioner has established neither a basis to invoke equitable tolling nor a credible claim of actual innocence. Accordingly, I recommend that his petition be denied on this procedural basis without reaching its merits.

## I.    BACKGROUND

On October 12, 1988, petitioner was convicted pursuant to a guilty plea in Onondaga County Court of the rape and murder of a three year-old victim in violation of N.Y. Penal Law §§ 130.35 and 125.25, respectively.[1] Dkt. No. 10 at 1; Dkt. No. 14-3 at 2-13. As a result of his guilty plea, Onondaga County Court Judge J. Kevin Mulroy sentenced petitioner as a second felony offender, in light of a prior 1982 conviction for sexual abuse in the first degree, to concurrent indeterminate terms of incarceration of twenty-three years to life for the murder charge and twelve and one-half to twenty-five years on the rape count. Dkt. No. 14-3 at 14-26. It appears that the petitioner, who waived his right of appeal except with regard to a challenge to his plea, did not appeal his conviction. Dkt. No. 10 at 1. He has been prolific, however, in his efforts to mount collateral challenges to his conviction in New York State courts.[2] The following represents the most complete and accurate account of those proceedings based upon available records.

---

[1]    Due to the age of the underlying conviction in this matter, both petitioner and respondent's counsel had difficulty in obtaining information associated with the relevant state court proceedings and compiling the necessary state court records associated with the matter. Dkt. No. 10 at 4-11; Dkt. No. 14-1 at 9.

[2]    As discussed below in Part III.A. of this report, petitioner's various collateral challenges have no effect on the timeliness issue currently before the court.

Petitioner's first collateral challenge was a motion to vacate his judgment of conviction pursuant to N.Y. Criminal Procedure Law ("CPL") § 440.10, filed in Onondaga County Court on January 16, 1991. Dkt. No. 14-2 at 7-10. Petitioner argued that he was unlawfully arrested, his counsel pressured him into pleading guilty, Judge Mulroy of the Onondaga County Court accepted a "conflict[ed] allocution," and Judge Mulroy was unfairly prejudiced during sentencing by photographs of the victim placed before him by the prosecution. *Id.* On March 5, 1991, Judge Mulroy denied plaintiff's motion, and petitioner's request for leave to appeal from that decision was apparently denied by the New York State Supreme Court Appellate Division, Fourth Department, on December 19, 1991. *Id.* at 20-22; Dkt. No. 10 at 10. Petitioner's application for leave to appeal from the Fourth Department's order was dismissed on March 23, 1992, by the New York Court of Appeals. Dkt. No. 10 at 10; *People v. St. Germain,* 79 N.Y.2d 952 (1992).

Petitioner filed a second motion to vacate the judgment of conviction pursuant to CPL § 440.10 on February 14, 1992. Dkt. No. 14-2 at 23-35. In that motion, he raised many of the arguments now asserted in support of his claim of actual innocence. *Compare id. with* Dkt. No. 10 at 23-28. Judge Mulroy denied the motion on March 3, 1992. Dkt. No. 14-2 at 36. It does not

appear from the record presently before the court that petitioner sought appellate review of the denial of this second motion to vacate.

On August 4, 1992, petitioner filed a third motion to vacate the judgment of conviction pursuant to CPL § 440.10, arguing that his guilty plea was involuntary and entered after receiving ineffective assistance of counsel. Dkt. No. 14-2 at 37-49. Following Judge Mulroy's denial of this motion, it appears from the record that petitioner's request for leave to appeal was denied by the Fourth Department in March 1993. Dkt. No. 10 at 10; Dkt. No. 14-2 at 50, 51-52, 115 n.1. The New York Court of Appeals thereafter dismissed petitioner's subsequent applications for leave to appeal on April 14, 1993. *People v. St. Germain*, 81 N.Y.2d 976 (1993) (table).[3]

St. Germain, acting *pro se*, filed a state habeas petition pursuant to Article 70 of the N.Y. Civil Practice Law and Rules ("CPLR") in Cayuga County Supreme Court on September 25, 1992. Dkt. No. 14-2 at 53-81. After appointing counsel to represent petitioner, Acting Supreme Court Justice Robert A. Contigulia issued a decision denying the petition on

---

[3]     Two decisions were issued by the New York Court of Appeals on April 14, 1993, one denying leave to appeal from a decision issued by the Fourth Department on March 1, 1993, and the second denying leave to appeal from a decision issued by the Fourth Department on March 6, 1993. *People v. St. Germain*, 81 N.Y.2d 976 (1993) (table). It is not clear to which proceedings those applications for leave to appeal to the New York Court of Appeals relate.

December 2, 1992. Dkt. No. 14-2 at 82-84. The dismissal was based upon the finding that petitioner had a then-pending motion for leave to appeal before the Fourth Department in connection with an earlier CPL § 440.10 motion to vacate raising the same issues. *Id.* at 84.

In connection with petitioner's appeal of the denial of his first petition for a writ of habeas corpus, a new attorney, John A. Cirando, Esq., was appointed to represent him. Dkt. No. 14-2 at 85-87, 88, 89-110. On March 11, 1994, the Fourth Department affirmed the lower court's dismissal of petitioner's first habeas petition. Dkt. No. 14-2 at 119; *People ex rel. St. Germain v. Walker*, 202 A.D.2d 1053 (4th Dep't 1994). The court concluded that (1) St. Germain's habeas petition was properly denied because it raised issues that either were or could have been raised on direct appeal, and (2) habeas corpus was not an appropriate remedy because, if he succeeded, he would only be entitled to withdraw his guilty plea and proceed to trial, rather than to an immediate release. *St. Germain*, 202 A.D.2d at 1053-54. The New York Court of Appeals denied petitioner's application for leave to appeal from that determination on June 14, 1994. Dkt. No. 14-2 at 120; *People ex rel. St. Germain v. Walker*, 83 N.Y.2d 758 (1994).

Petitioner filed a second habeas petition on March 22, 2013, in the Third Department. Dkt. No. 14-2 at 121-40. St. Germain argued he should

be granted habeas relief based on allegations that Judge Mulroy violated the code of judicial conduct by conducting an improper "*ex parte*" meeting in chambers with members of the news media and allegedly coercing him to plead guilty. *Id.* at 121-28. On May 9, 2013, the Third Department issued a decision denying the petition, without requiring a response from the named respondent. *Id.* at 142. Petitioner's application for leave to appeal to the New York Court of Appeals from that determination was denied on August 27, 2013.[4] Dkt. No. 10 at 10; Dkt. No. 14-2 at 151; *People ex rel. St. Germain v. Recette*, 21 N.Y.3d 863 (2013).

---

[4]  There are three additional court determinations of record concerning the petitioner that cannot be linked to any corresponding requests for relief contained within the record now before the court. On September 10, 1991, the New York Court of Appeals denied an application for leave to appeal a decision rendered by the Appellate Division on May 6, 1991. *People ex rel. St. Germain v. Senkowski*, 78 N.Y.2d 857 (1991). The caption of that decision suggests that it relates to a state court petition for habeas relief.

On March 12, 1993, the Fourth Department denied a motion for leave to appeal in a matter that also suggests it relates to a habeas petition. *People ex rel St. Germain v. Walker*, 191 A.D.2d 1049 (4th Dep't 1993). In its decision, the court noted the following:

> The County Clerk has informed the Court that there is no record of any such judgment dismissing relator's petition having been entered. Moreover, an appeal from a judgment dismissing a habeas corpus petition lies as a matter of right rather than by permission.

*St. Germain*, 191 A.D.2d at 1049. It thus appears that this likely relates to an effort by a petitioner to seek leave to appeal from the Cayuga County Supreme Court's order and judgment December 2, 1992, dismissing his first habeas petition.

More than ten years later, the New York Court of Appeals dismissed an application by petitioner for leave to appeal from an order of an individual justice of the Appellate Division. *People ex rel. St. Germain v. Senkowski*, 100 N.Y.2d 554 (2003). According to the order, petitioner filed his request on May 5, 2003, and the order was issued on June 12, 2003. *St. Germain*, 100 N.Y.2d at 554. No further information

II.  <u>PROCEDURAL HISTORY</u>

Petitioner commenced this proceeding on December 12, 2013. Dkt. No. 1. Upon initial review of the petition and accompanying application for leave to proceed *in forma pauperis* ("IFP"), District Judge Mae A. D'Agostino issued a decision and order on December 27, 2103, granting petitioner's IFP application but finding that, without more information, the petition was inexcusably filed beyond the applicable statute of limitations. Dkt. No. 3. For that reason, Judge D'Agostino directed petitioner to file an amended petition containing sufficient information to permit the court to meaningfully analyze the timeliness issue. *Id.*

As instructed, St. Germain filed an amended petition in the matter on March 28, 2014, in which he asserts seven grounds for habeas relief. Dkt. No. 10. Those grounds can be summarized as follows: (1) he was deprived procedural due process and equal protection when the Appellate Division failed to issue a writ of habeas corpus; (2) he was denied equal protection and due process when the Appellate Division permitted the Attorney General to avoid responding to his petition and unilaterally decided its outcome; and (3) he is being subjected to cruel and unusual punishment

_____

concerning this matter, which also appears to relate to a state habeas proceeding, can be found in the record or through publicly available sources.

based upon his continued incarceration after demonstrating his entitlement to a writ of habeas corpus. *Id.* at 12-14, 21.

After reviewing St. Germain's amended petition, Judge D'Agostino issued a second decision and order, dated May 2, 2014, again highlighting the timeliness question and directing respondent to answer the amended petition limited to that issue. Dkt. No. 13.

On July 31, 2014, respondent submitted an answer and supporting memorandum addressing the question of whether the petition in this matter is time-barred. Dkt. No. 14. Also included with those submissions are the limited state court transcripts that are currently available concerning the matter, as well as the available records associated with petitioner's post-conviction proceedings filed in state court.[5] Dkt. Nos. 14-2, 14-3. Petitioner has since submitted a reply to respondent's opposition, although it is addressed to the merits, and does not speak directly to the limited question now before the court. Dkt. No. 16. The issue of whether St. Germain's petition is timely is now fully briefed, and the matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) in Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

---

[5]     Respondent was able to locate only the first twenty pages of the transcript from petitioner's plea hearing in state court. Dkt. No. 14-1 at 7 n. 4.

III.  DISCUSSION

A.  Timeliness

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), bringing about sweeping reform of the prison inmate litigation landscape, including new restrictions on the power of federal courts to grant habeas relief to state court prisoners under 28 U.S.C. § 2254. One of the restrictions resulted from the creation of a one-year limitation period for filing habeas petitions. 28 U.S.C. § 2244(d)(1); *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002); *Smith v. McGinnis*, 208 F.3d 13, 15 (2d Cir. 2000). Section 2244(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). In cases where the challenged conviction became final prior to April 24, 1996, the date of enactment of the AEDPA, the courts have engrafted a one-year grace period, providing that a federal habeas petition in such a case must be filed on or before April 24, 1997.[6] *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998); *accord, e.g., Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 115 (2d Cir. 2008).

Petitioner commenced this proceeding on December 12, 2013, significantly beyond the April 24, 1997 deadline. Before concluding that the petition is untimely, however, I must examine the timing of petitioner's properly filed state court proceedings collaterally challenging his judgment of conviction to determine if any period of time during which those proceedings were pending should be excluded from the statute of limitations calculation. *See* 28 U.S.C. § 2244(d)(2) ("The time during which

---

[6]  Because petitioner did not file a direct appeal in state court, his conviction became final thirty days after sentencing, which, in this case, was November 11, 1988. *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012); *Bethea v. Girdich*, 293 F.3d 577, 578-79 (2d Cir. 2002).

11

a properly filed application for post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation[.]"); *see McGinnis*, 208 F.3d at 15 ("Section 2244 also has a tolling provision that applies to both the statute of limitations and the one-year grace period.").

In this case, all but one of petitioner's state-court proceedings collaterally challenging his conviction had been resolved long before the April 24, 1997 deadline. In particular, the Onondaga County Court's decision denying petitioner's first motion to vacate the judgment of conviction became final on December 19, 1991, the date on which the Fourth Department denied petitioner's request for leave to appeal the trial court's decision. Dkt. No. 10 at 10. Because petitioner did not appeal the denial of his second motion to vacate, the county court's decision became final on April 2, 1992, which is the date on which his time to file a request for leave to appeal to the Fourth Department expired. *See* C.P.L. § 460.10(4)(a) ("An appeal by a defendant to an intermediate appellate court by permission. . . is taken as follows: (a) Within thirty days after service upon the defendant of a copy of the order sought to be appealed, the defendant must make an application, pursuant to [C.P.L. §] 406.15, for a certificate granting leave to appeal to the intermediate appellate court."). Petitioner's

third motion to vacate became final on March 12, 1993, the date on which it appears that the Fourth Department denied petitioner's request for leave to appeal the trial court's decision denying his motion. Dkt. No. 14-2 at 81, 112. Finally, petitioner's first state-court petition for a writ of habeas corpus became final on June 14, 1994, when the New York Court of Appeals denied petitioner's request for leave to appeal the Third Department's decision affirming the Cayuga County Supreme Court's denial of the petition. Dkt. No. 14-2 at 119; *People ex rel. St. Germain v. Walker*, 83 N.Y.2d 758 (1994). Petitioner's second habeas petition, filed in state court on March 22, 2013, was filed well beyond April 24, 1997, and did not serve to reset the start of the limitations period. *McGinnis*, 208 F.3d at 17 ("We therefore hold that proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run.").

Accordingly, because nothing in the record now before the court suggests that any of the various state collateral challenges brought by the petitioner were pending at any time between April 24, 1996 and April 24, 1997, the petition was filed beyond the applicable statute of limitations and

is subject to dismissal on this procedural basis, absent a basis to overlook its untimeliness.

### B. Equitable Tolling

Before concluding that the pending petition is time-barred and subject to dismissal, the court must consider whether petitioner is entitled to any equitable tolling. "Although AEDPA does not provide that its limitations period may be tolled for any reason other than the pendency of a state post-conviction motion, in 'rare and exceptional circumstances' a petitioner may invoke the courts' power to equitably toll the limitations period." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (quoting *McGinnis*, 208 F.3d at 17). Under this narrow exception, the petitioner bears the burden of establishing that "he has been pursuing his rights diligently, and . . . that some extraordinary circumstances stood in his way." *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005); *see also Doe*, 391 F.3d at 159 ("To qualify for [equitable tolling], the petitioner must establish extraordinary circumstances prevented him from filing his petition on time."). A petitioner seeking the benefit of equitable tolling is required to prove a causal connection between "the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing[.]" *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

There is nothing in the record now before the court to suggest the existence of extraordinary circumstances that prevented petitioner, over a period of more than sixteen years, from filing a federal habeas petition. Petitioner's chronicled history of state court proceedings adequately demonstrates his ability to bring *pro se* collateral challenges to his conviction. Petitioner has not demonstrated that, despite due diligence, he was prevented by extraordinary circumstances beyond his control from filing a habeas petition with this court prior to April 24, 1997. I therefore recommend the court not extend equitable tolling to petitioner in this case.

C.    Actual Innocence

In *Rivas v. Fischer*, 687 F.3d 514 (2d Cir. 2012), the Second Circuit concluded that, where a petitioner can demonstrate "actual innocence," he may be excused from the AEDPA one-year statute of limitations period. *Rivas*, 687 F.3d at 539-43. This holding was vindicated a year later by the Supreme Court, which concluded that a credible showing of actual innocence under the standard previously announced in *Schlup v. Delo*, 513 U.S. 298, 329 (1995), could serve as a gateway for gaining review of an otherwise time-barred habeas petition. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).

"To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327). The claim of innocence must be both "credible" and "compelling." *Rivas*, 687 F.3d at 541 (citing *House v. Bell*, 547 U.S. at 521, 538 (2006)). To be found credible, a claim must be supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye witness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324; *accord, Rivas*, 687 F.3d at 541. A claim of innocence is compelling if the petitioner proves that it is more likely than not that "any reasonable juror would have reasonable doubt." *House,* 547 U.S. 538; *accord, Rivas*, 687 F.3d at 541. Actual innocence serves only as a gateway to federal habeas review, meaning that it does not, standing alone, warrant relief, but merely permits an otherwise untimely petition to be reviewed on the merits. *McGuiggin*, 133 S. Ct. at 1928.

In this case, petitioner's actual innocence claim derives from evidence that was available to him and his counsel at the time he entered a plea of guilty. Dkt. No. 10 at 23-28. Because no new evidence is cited, he cannot rely on it in for purposes of his actual innocence claim. *See Johnson v.*

*Medina*, 547 F. App'x 880, 885 (10th Cir. 2013) ("Actual innocence claims focus on 'new' evidence—'relevant evidence that was either excluded or unavailable at trial.'" (quoting *Schlup*, 513 U.S. at 327-28)); *Mardis v. Falk*, No. 14-CV-2895, 2015 WL 1064444, at *4 (D. Colo. Mar. 9, 2015) (rejecting actual innocence claim because the petitioner "fail[ed] to provide any new reliable evidence to support his claim").[7]  Despite his awareness of all of this evidence, St. Germain entered a knowing and voluntary plea of guilty, a fact that works against a finding of actual innocence. *See Johnson*, 547 F. App'x at 885 ("[The petitioner's] plea of guilty simply undermines his claim [in the context of actual innocence] that another individual committed the crime to which he pled guilty."); *Chestang v. Sisto*, 522 F. App'x. 389 (9th Cir. 2013) (concluding that, while pleading guilty does not foreclose the possibility of actual innocence, it is seriously undermined by the entry of such a plea).

In addition to not providing any new evidence, petitioner's actual innocence claim is not compelling. Although petitioner contends that the timeline for the underlying crimes, as developed by law enforcement, is not consistent, he fails to offer any persuasive proof upon which a juror would rely for reasonable doubt. Dkt. No. 10 at 23-25. Petitioner also speculates that "a crime lab officer named Bland" and Lieutenant Werebeck, a police

---

[7]      All unreported decisions cited to in this report have been appended for the convenience of the *pro se* petitioner.

officer with the Onondaga County Sheriff's Department, conspired to tamper with physical evidence to prove petitioner's guilt. *Id.* at 25-27. Indeed, petitioner's mere conjecture is emphasized by his statement that, "[b]ecause of bad history with the police department, it is believed that the police had assumed that the petitioner was the guilty party and they began to ensure that a conviction would be had." *Id.* at 27.

Because petitioner has failed to provide either new or compelling evidence, I recommend the court reject his actual innocence claim and dismiss the petition as untimely.

D.    <u>Certificate of Appealability</u>

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A

petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted). A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

In this instance, I conclude that the petitioner has not demonstrated that jurists of reason would find it debatable whether the petition in this matter is timely and therefore recommend against the issuance of a COA.

IV.    SUMMARY AND RECOMMDENATION

The petition in this matter is untimely because it was filed more than twenty-six years after petitioner's conviction and more than sixteen years following the expiration of the limitation period for seeking habeas relief. In his petition, St. Germain offers no extraordinary circumstances that precluded him from submitting a timely petition, and thus has not

demonstrated his entitlement to a finding of equitable tolling, which, if applicable, could excuse his late filing. Moreover, although an otherwise untimely petition may be reviewed on the merits in the event of a showing of actual innocence, I conclude that petitioner's claim is foreclosed because it is based solely upon evidence available to petitioner and his attorney at the time his plea was entered, and, in any event, is neither credible nor compelling, as required under the limited actual innocence exception. Accordingly, it is hereby respectfully

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects; and it is further

RECOMMENDED that a certificate of appealability not issue with respect to any of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:      September 10, 2015
            Syracuse, New York

2015 WL 1064444
Only the Westlaw citation is currently available.
United States District Court,
D. Colorado.

Alexander S. Mardis, Propria Persona, Applicant,

v.

James Falk, Warden Sterling Corr. Facility,
and the Attorney General of the State of
Colorado, John Suthers, Respondents.

Civil Action No. 14–cv–02895–
GPG | Signed March 9, 2015

**Attorneys and Law Firms**

Alexander S. Mardis, Sterling, CO, pro se.

Ryan Alan Crane, Colorado Attorney General's Office,
Denver, CO, for Respondents.

**ORDER OF DISMISSAL**

LEWIS T. BABCOCK, Senior Judge, United States District
Court

**\*1** Applicant, Alexander S. Mardis, is a prisoner in the
custody of the Colorado Department of Corrections (DOC)
currently incarcerated at the Sterling Correctional Facility in
Sterling, Colorado. Mr. Mardis filed a *pro se* an Amended
Application for a Writ of Habeas Corpus Pursuant to 28
U.S.C. § 2254 (ECF No. 16) challenging the validity of
his conviction in Case No. 11CR1331 in the Weld County
District Court. Mr. Mardis has been granted leave to proceed
*in forma pauperis.*

On January 15, 2015, Magistrate Gordon P. Gallagher
directed Respondents to file a Pre–Answer Response limited
to addressing the affirmative defenses of timeliness under 28
U.S.C. § 2244(d) and exhaustion of state court remedies under
28 U.S.C. § 2254(b)(1)(A). Respondents submitted a Pre–
Answer Response (ECF No. 20) on January 28, 2015. Mr.
Mardis filed a Reply (ECF No. 23), a Memorandum of Law
(ECF No. 24), and Omnibus Motion (ECF No. 25).

The Court must construe liberally the Application and other
documents filed by Mr. Mardis because he is not represented
by an attorney. *See Haines v. Kerner,* 404 U.S. 519, 520–

21 (1972); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.
1991). However, the Court should not act as an advocate for
a *pro se* litigant. *See Hall,* 935 F.2d at 1110. For the reasons
stated below, the Court will dismiss the action as barred by
the one-year limitation period.

**I. Background**
On November 9, 2011, Mr. Mardis pled guilty to felony
menacing and criminal mischief pursuant to a deferred
judgment and sentence (DJS) agreement. (ECF No. 20–2 at
1; ECF No. 20–1 at 3, 5, 12). Pursuant to the agreement,
if Mr. Mardis successfully completed a two year term of
supervision, his guilty plea would be withdrawn, and a
conviction would not be entered. *See* Colo. Rev. Stat. § 18–
1.3–102 (2014).

Mr. Mardis later violated the terms of his supervision, and
on May 22, 2012, the trial court revoked the DJS, entered
judgment on the conviction, and sentenced him to probation.
(ECF No. 20–2 at 1; ECF No. 20–1 at 10, 12). Mr. Mardis
did not appeal.

Mr. Mardis later violated the terms of his probation, and
on June 20, 2013, the trial court revoked the probationary
sentence and sentenced him to one year in the custody of the
DOC, to be followed by two years of mandatory parole. (ECF
No. 20–2 at 1; ECF No. 20–1 at 5, 8, 10). Mr. Mardis did not
appeal.

On August 1, 2014, Mr. Mardis filed a postconviction motion
pursuant to Colorado Rule of Criminal Procedure 35(c). (ECF
No. 20–1 at 8). On October 31, 2014, the trial court denied
the motion in a written order. (ECF No. 20–2). Mr. Mardis
appealed and that appeal remains pending. (ECF No. 20–1 at
7; ECF No. 20–3).

Mr. Mardis initiated the instant action in this Court
on October 23, 2014. In the Amended Application, Mr.
Mardis asserts three claims: (1) that he was "falsely
convicted" because his "public defender misrepresented me
and unconscionably took the plea" for him; (2) that he acted
"under duress and necessity" to defend himself and thus, there
was insufficient evidence to support the conviction of felony
menacing; and (3) that he received ineffective assistance of
counsel because his public defender "illegally accepted the
plea" from me and made fraudulent misrepresentations. (ECF
No. 16 at 5–6).

## II. Timeliness

**\*2** Respondents argue that this action is barred by the one-year limitation period in 28 U.S.C. § 2244(d). Section 2244(d) provides as follows:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In order to apply the one-year limitation period, the Court first must determine when the judgment of conviction in Mr. Mardis' criminal case became final. Mr. Mardis initially pled guilty pursuant to a DJS agreement on November 9, 2011. (*See* ECF No. 20–1 at; ECF No. 20–2 at). However, it is unclear whether this amounts to a "judgment of conviction." *See Aguilar–Alvarez v. Holder,* 528 Fed.Appx. 862, 868–69 (10th Cir. 2013) (recognizing that whether a deferred adjudication constitutes a "judgment" sufficient to trigger the statutory time period under § 2244(d)(1) is an "open question").

This Court has treated a Colorado DJS as insufficiently final to allow habeas relief on at least one occasion. *See Gross v. Davis,* 2012 WL 2863236, No. 12–cv–001041–BNB (D. Colo. July 11, 2012). This decision, however, was premised on the fact that Colorado law appeared to provide no mechanism to challenge a DJS, because a DJS could not be directly appealed or collaterally attacked. *See People v. Carbajal,* 198 P.3d 102, 105 (Colo. 2008) (holding that a "deferred judgment is not a final judgment, and thus may not be subject to either Crim. P. 35 review or direct appellate review until revoked."). The Colorado Supreme Court has since clarified that a defendant sentenced pursuant to a DJS may challenge the agreement under Colo. R. Crim. P. 32(d) by seeking to withdraw a guilty plea prior to sentencing. *See Kazadi v. People,* 291 P.3d 16, 21–23 (Colo. 2012).

However, the Court need not decide whether Mr. Mardis' guilty plea under the DJS agreement constitutes a state court judgment that triggers the one-year limitation period because the application is untimely regardless. Here, Mr. Mardis pled guilty pursuant to the DJS agreement on November 9, 2011. (ECF No. 20–2 at 1; ECF No. 20–1 at 3, 5, 12). When Mr. Mardis admitted to violating the terms of his supervision under the DJS, the trial court revoked the DJS, entered a final conviction, and sentenced Mr. Mardis to probation on May 22, 2012. (ECF No. 20–2 at 1; ECF No. 20–1 at 10, 12). Even though Mr. Mardis was later resentenced to one year in the DOC and two years of mandatory parole following revocation of his probation in 2013, this resentencing does not start a new limitations period except with respect to claims concerning the resentencing. *See, e.g., Bachman v. Bagley,* 487 F.3d 979, 982 (6th Cir. 2007) (holding that applicant's designation as a sexual predator did not restart statute of limitations, as all federal claims relate to original sentence); *see also Prendergast v. Clements,* No. 11–cv–03263, 2012 WL 1320157, at \*3 (D. Colo. Apr. 17, 2012) (unpublished opinion). The claims that Mr. Mardis asserts in the Application challenge his 2011 plea agreement and 2012 felony menacing conviction; he does not assert any claims that challenge his resentencing in 2013.

**\*3** Therefore, because Mr. Mardis did not file a direct appeal of his conviction and probationary sentence entered on May 22, 2012, the Court finds that his conviction became final on July 6, 2012, forty-five days after he was convicted of felony menacing and sentenced to probation. *See* Colo. App. R. 4(b); *Locke v. Saffle,* 237 F.3d 1269, 1273 (10th Cir. 2001).

The Court also finds that the one-year limitation period began to run on July 6, 2012 because Mr. Mardis does not contend he was prevented by unconstitutional state action from filing this action sooner; he is not asserting any constitutional rights newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and he knew or could have discovered the factual predicate for his claims before the judgment became final. *See* 28 U.S.C. § 2244(d)(1)(B)–(D).

The Court must next determine whether the one-year limitation period was tolled for any amount of time. Pursuant to 28 U.S.C. § 2244(d)(2), a properly filed state court postconviction motion tolls the one-year limitation period while the motion is pending. An application for postconviction review is properly filed with the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett,* 531 U.S. 4, 8 (2000). The requirements include:

> (1) the place and time of filing; (2) the payment or waiver of any required filing fees; (3) the obtaining of any necessary judicial authorizations that are conditions precedent to filing, such as satisfying any filing preconditions that may have been imposed on an abusive filer; and (4) other conditions precedent that the state may impose upon the filing of a post-conviction motion.

*Habteselassie v. Novak,* 209 F.3d 1208, 1210–11 (10th Cir. 2000).

The issue of whether a postconviction motion is pending is a matter of federal law. *See Gibson v. Klinger,* 232 F.3d 799, 806 (10th Cir. 2000). The term "pending" includes "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application." *Barnett v. Lemaster,* 167 F.3d 1321, 1323 (10th Cir. 1999). Furthermore, "regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner could have sought an appeal under state law." *Gibson,* 232 F.3d at 804.

There were no pending postconviction motions in Mr. Mardis' state court criminal case between July 6, 2012, and August 1, 2014, when Mr. Mardis filed his first postconviction motion pursuant to Rule 35(c). (*See* ECF No.). Accordingly, the one year limitation period began to run on July 6, 2012, and ran until it expired on Monday, July 8, 2013. Because the one-year limitation period expired before Mr. Mardis filed his first postconviction motion on August 1, 2014, that motion, and any subsequent motions, could not have tolled the one-year limitation period. *See Clark v. Oklahoma,* 468 F.3d 711, 714 (10th Cir. 2006) (stating that state court postconviction motions toll the one-year limitation period only if they are filed within the one-year limitation period). Mr. Mardis did not file his habeas corpus application in this Court until October 23, 2014, more than one year after the limitations period expired. Therefore, the instant action is time-barred in the absence of some other reason to toll the one-year limitation period.

**\*4** "[T]he timeliness provision in the federal habeas corpus statute is subject to equitable tolling." *Holland v. Florida,* 130 S. Ct. 2549, 2554 (2010). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 2562 (internal quotation marks and citation omitted); *accord Yang v. Archuleta,* 525 U.S. 925, 929 (10th Cir. 2008) (" 'Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.' ") (quoting *Wallace v. Kato,* 549 U.S. 384, 396 (2007)). "[A]n inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." *Mack v. Falk,* 509 Fed.Appx. 756, 760 (10th Cir. 2013) (quoting *Yang v. Archuleta,* 525 U.S. 925, 928 (10th Cir. 2008)) (quotation marks and citations omitted). The inmate must allege with specificity the steps he took to pursue his federal claims. *Yang,* 525 F.3d at 930.

Equitable tolling also may be appropriate if the applicant actually is innocent. *See Gibson,* 232 F.3d at 808. An actual innocence argument "is premised on the same fundamental miscarriage of justice exception that was discussed by the Supreme Court" in *Schlup v. Delo,* 513 U.S. 298 (1995), and *Coleman v. Thompson,* 501 U.S. 722 (1991). Therefore, in the rare and extraordinary case in which a habeas applicant can demonstrate equitable tolling is appropriate on actual innocence grounds, the applicant is not required to demonstrate he diligently pursued the actual innocence claim. *Lopez v. Trani,* 628 F.3d 1228, 1230–31 (10th Cir. 2010).

However, to be credible, a claim of actual innocence requires an applicant "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. The applicant then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. The Court emphasizes that a "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Id.* at 324.

Mr. Mardis alleges that he has been pursing his rights diligently and that he is actually innocent. Mr. Mardis, however, fails to provide any new reliable evidence to support his claim of actual innocence. *See Schlup,* 513 U.S. at 324; *see also Johnson v. Medina,* 547 Fed.Appx. 880, 885 (10th Cir. 2013) (recognizing that actual innocence claims focus on "new evidence" and that applicant was aware of existence of alternate suspect during trial). Moreover, "in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Hall,* 935 F.2d at 1110; *see also Ketchum v. Cruz,* 775 F. Supp. 1399, 1403 (D. Colo. 1991) (vague and conclusory allegations that his rights have been violated does not entitle a *pro se* pleader to a day in court regardless of how liberally the pleadings are construed), *aff'd,* 961 F.2d 916 (10th Cir. 1992).

For all these reasons, the Court finds that Mr. Mardis fails to present any argument that would justify equitable tolling of the one-year limitation period. Therefore, the action will be dismissed in its entirety as barred by the one-year limitation period. Because the Court finds that the action is untimely, the Court need not address Respondents' additional argument that Mr. Mardis' claims are unexhausted because he has not yet invoked one complete round of the State's established appellate review process.

**\*5** Finally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States,* 369 U.S. 438 (1962). If Mr. Mardis files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24. Accordingly, it is

ORDERED that the Application is denied and the action is dismissed because it is barred by the one-year limitation period in 28 U.S.C. § 2244(d). It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right. It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied with leave to re-file in the Tenth Circuit. It is

FURTHER ORDERED that all pending motions are denied.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1064444

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.